IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN ALLEN RAINWATER,

              Petitioner,

    vs.

AUDREY K. KING, Executive Director,
Coalinga State Hospital,

              Respondent.

No. 2:14-cv-02567-JKS

MEMORANDUM DECISION

John Allen Rainwater, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.[1] Rainwater is in California state

custody and involuntarily civilly committed to the Coalinga State Hospital as a sexually violent

predator ("SVP"). Respondent has answered, and Rainwater has replied.

---

[1] A person in custody pursuant to the judgment of a state court may file a petition
for a writ of habeas corpus in the United States district courts if the custody is in violation of the
Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams
v. Taylor*, 529 U.S. 362, 375, n.7 (2000). The fact that Rainwater is challenging his civil
commitment for mental illness rather than his underlying conviction does not change the
outcome as civil commitments are typically challenged in habeas proceedings. *See Duncan v.
Walker*, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies
§ 2254's "in custody" requirement).

A person in state custody may challenge his confinement under 28 U.S.C. § 2241 or 28
U.S.C. § 2254. However, a § 2241 petition generally challenges the execution of a sentence
such as the "manner, location, or condition" of confinement. *Hernandez v. Campbell*, 204 F.3d
861, 864 (9th Cir. 2000). Because Rainwater challenges the term of his confinement rather than
the conditions surrounding it, he has properly brought his claim under § 2254. *See Huftile v.
Miccio–Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("[D]etainees under an involuntary
civil commitment scheme . . . may use a § 2254 habeas petition to challenge a term of
confinement.").

## I. BACKGROUND/PRIOR PROCEEDINGS

On November 5, 2010, a jury found Rainwater to be a sexually violent predator under the

Sexually Violent Predators Act ("SVPA"), CAL. WELF. & INST. CODE § 6600 et seq., and the

court civilly committed him to the California Department of Mental Health ("DMH") for

"appropriate treatment and confinement in a secure facility for an indeterminate term until such

time that he is entitled to be released according to law."

On direct appeal, the California Court of Appeal summarized the following procedural

history and evidence presented at Rainwater's civil commitment trial:

A. *Juvenile and Criminal History*

[Rainwater] began assaulting small boys, all of whom were strangers to him, when he was very young. In 1974, when [Rainwater] was 10, he lured a four-year-old boy to a secluded area and severely beat him in the head with a two-by-four. He pulled chucks of the boy's hair out, pulled his pants down and looked at the boy's buttocks. [Rainwater] was arrested, made a ward of the state, and placed in a mental facility. Several group home placements followed.

At 13, shortly after being released from a group home, [Rainwater] accosted a seven-year-old boy he saw playing near a ditch. He forced the boy's pants down and masturbated the boy and himself. That same year, [Rainwater] told another seven year old boy he encountered about magic rocks in some nearby bushes. After luring the child into the bushes, [Rainwater] forced the child to masturbate him and [Rainwater] masturbated the child. [Rainwater] admitted to orally copulating both boys. Based on these assaults, [Rainwater] was arrested for child molestation and later pleaded guilty to annoying a child. He was placed in several more group homes.

[Rainwater] was eventually released to his parents when he was 15. Like before, he sought out and molested more victims a short time later. He saw a seven-year-old boy walking home from swimming lessons. [Rainwater] was riding a bike and enticed the boy to get on the bike by telling him he would buy him a soda. [Rainwater] rode to a secluded area, slapped the child in the face and threatened him, pulled his pants down, put his mouth on the child's buttocks, and also forced the child to masturbate him. He also tried to sodomize the boy. Later that year, [Rainwater] was out trolling for another victim. He approached an 11–year–old boy walking home from school and forced the boy onto his moped. He drove the boy to a closed drive-in movie theater. After slapping the boy and forcing him to undress, he orally copulated and sodomized the child. [Rainwater] threatened to kill the boy if he told. For these offenses, [Rainwater] was charged with sodomy, child molestation, oral copulation, kidnapping, and assault and

battery. He pleaded to child molestation and was sentenced to six years in the California Youth Authority.

When he arrived at the Youth Authority, [Rainwater] volunteered for the WINTU program, which provides treatment in a therapeutic setting. While at WINTU, [Rainwater] wrote that he thought about killing himself, his parents, and a staff member and his little boy, had killed animals for no reason, and fantasized about watching little boys cry in pain as he molested them. [Rainwater] also wrote about plans to escape.

On November 23, 1981, when he was 17, [Rainwater] did escape with the intent to molest more victims. Within 24 hours, he accosted two young boys, aged 10 and 11. [Rainwater] encountered the friends coming home from school. He lured them to the railroad tracks under the guise of seeing a train wreck. [Rainwater] grabbed the boys and forced them to the ground. He removed their clothes and tied them together using their shoe laces. [Rainwater] forced the boys to orally copulate each other. He also forced one boy to orally copulate him and then he sodomized the boy. [Rainwater] fled on one of the boys' bikes and was later arrested.

[Rainwater] was prosecuted as an adult. In March 1982, [Rainwater] pleaded guilty to commission of forcible lewd and lascivious acts on a child under 14 years of age (PEN. CODE, § 288, subd. (b)), forcible oral copulation of a child under 14 years of age (PEN. CODE, § 288a, former subd. (c)), forcible sodomy (Pen.Code, § 286, former subd. (c)), and robbery (PEN. CODE, § 211). He was sentenced to 25 years in prison.

### B. *Prison and Parole*

[Rainwater] served nearly 13 years of his sentence and sustained numerous disciplinary violations while incarcerated. He was paroled in December 1994. [Rainwater] violated parole several times and was returned to custody for months at a time. While out on parole in 1997, [Rainwater] saw a young boy on the street and fantasized about molesting him. The fantasies were so intense that [Rainwater] called his parole agent and asked to be incarcerated in the county jail until the fantasies dissipated. He was released after four days. A few days later, [Rainwater] violated curfew and a warrant was issued for his arrest. [Rainwater] was ultimately apprehended near the location where he orally copulated and sodomized his last victims. SVP proceedings were initiated against [Rainwater] while serving time for that parole violation.

### C. *SVPA Petitions*

The Sacramento County District Attorney filed the initial petition alleging [Rainwater] was an SVP in 1997. Trial on the petition resulted in a hung jury. [Rainwater] waived his right to a subsequent jury trial and submitted the matter to the court for decision. In June 1998, the court found the petition true beyond a reasonable doubt and ordered [Rainwater] committed to Atascadero State Hospital for a two-year term. This court affirmed the judgment on appeal.

In May 2000, [Rainwater] stipulated that he remained an SVP. He agreed to extend his commitment until June 2, 2002.

In March 2002, the prosecutor filed a petition to extend [Rainwater's] commitment until June 2, 2004 (first extension petition). In July the court found probable cause to hold [Rainwater] over for trial. Trial on the first extension petition was set for October 2002. This trial date was subsequently continued several times, both at the request of [Rainwater's] counsel and the prosecutor. Trial was ultimately reset for April 5, 2004.

In February 2004, the prosecutor filed another petition to extend [Rainwater's] commitment until June 2, 2006 (second extension petition). With both parties' consent, the April trial date on the first extension petition was vacated so the court could conduct a probable cause hearing on the second extension petition prior to trial. Initially set for April 2004, the probable cause hearing commenced in May and was continued to July 2004. The court found probable cause to believe [Rainwater] continued to meet the SVP criteria and trial was set in November 2004. The parties requested several continuances and trial was reset for March 28, 2006.

Four days before trial, on March 24, the prosecutor filed another petition to extend [Rainwater's] commitment until June 2, 2008 (third extension petition). Trial on the previous extension petitions was vacated to conduct a probable cause hearing on the third extension petition. The probable cause hearing commenced in April, was continued to May, and later concluded in June 2006. The court found probable cause that [Rainwater] met the criteria for recommitment as an SVP and continued the matter to August 2006 for further proceedings. The matter was continued over the next two months, either at [Rainwater's] request or with his counsel's agreement, and trial was eventually set for March 6, 2007.

We note that the Legislature amended the SVPA in September 2006 to lengthen the term of an SVP commitment from two years to an indeterminate term; a voter initiative that passed in November 2006 made similar changes. (Senate Bill 1128, Stats. 2006, ch. 337, § 55 (eff. Sept. 20, 2006) [amending WELF. & INST. CODE, § 6004]; Prop. 83, §§ 27, 28 (eff. Nov. 8, 2006).)

Because [Rainwater's] counsel was in trial on another matter, [Rainwater's] trial was continued to the end of the month. The matter was again continued to April 11, 2007, apparently because [Rainwater's] counsel was preparing a writ petition to this court challenging whether recent amendments to the SVPA deprived the court of jurisdiction over pending recommitment petitions like [Rainwater's]. The writ petition challenging the jurisdictional issue was later filed in *Bourquez v. Superior Court* (2007) 156 Cal. App. 4th 1275, review denied February 27, 2008, (*Bourquez*) [Rainwater] was not a named party in the writ petition.

In light of the writ filing, the trial court stayed numerous SVP recommitment cases, including [Rainwater's] matter. The prosecutor subsequently filed an amended petition to extend [Rainwater's] commitment indefinitely under the amended law.

The trial court continued to stay [Rainwater's] case pending the Third District's ruling on the writ petition in *Bourquez*. This court denied the writ in November 2007. (*Bourquez v. Superior Court*, *supra*, 156 Cal. App. 4th 1275.)

Following denial of the writ in *Bourquez*, [Rainwater's] matter was continued several more times until January 2009. [Rainwater] was present during these hearings

4

and did not object to his counsel's requested continuances. The case was continued twice more to April 10, 2009, after which the court continued the matter on several occasions until August 2009 to address a motion to dismiss filed by [Rainwater].

On August 31, 2009, two days after the court denied the motion to dismiss, [Rainwater's] counsel requested a December trial date. To allow a defense expert to review his files and evaluate him, [Rainwater] agreed to a trial date on January 6, 2010. The trial was trailed twice at [Rainwater's] counsel's request and then reset with [Rainwater's] consent to February 22, 2010, due to an unavailability of defense experts and further required preparation.

On February 10, 2010, defense counsel requested a further continuance to May 11, 2010, because he was in trial on another matter. The court granted the continuance over [Rainwater's] objection.

The matter was continued five more times until October 19, 2010, sometimes at defense counsel's request and apparently with [Rainwater's] consent, and other times due to the lack of an available courtroom.

D. *Motion and Writ Filings*

Before the case was tried, [Rainwater] petitioned several times in the trial court for writs of habeas corpus to dismiss the proceedings and filed several motions to substitute counsel. Between 2007 and 2008, [Rainwater] filed two petitions for writs of habeas corpus in the court below challenging the court's jurisdiction over the recommitment petitions in light of the changes to the SVPA as well as the use of certain protocols at his original SVP trial in 1998 and again in the recommitment proceedings. The court denied both petitions.

[Rainwater] filed a third pro per petition for writ of habeas corpus in January 2009, claiming he had been denied a speedy trial on the petitions to extend his commitment as an SVP. The writ petition cited *People v. Litmon* (2008) 162 Cal. App. 4th 383 (*Litmon*) as support for dismissal. The court summarily denied the petition on February 24, 2009, without prejudice to raising the issue in a motion before the trial court.

Approximately three weeks later, [Rainwater] filed a pro per motion to dismiss based on *Litmon* raising the speedy trial issue. At the end of May 2009, the court appointed special counsel to represent [Rainwater] on the motion to dismiss. After further briefing and argument, the court denied the motion on August 28, 2009, concluding the length of delay was reasonable in light of the factors discussed in *Litmon*.

On February 9, 2010, [Rainwater] filed a fourth pro per petition for writ of habeas corpus in the trial court asserting his speedy trial rights had been denied but also claiming he was now being forced to go to trial against his will. The court later denied the writ without prejudice to raising the issue in a motion before the trial court. It does not appear, based on the record, that [Rainwater] ever filed a motion to dismiss in the trial court following the February 2010 denial of his writ petition. And, although [Rainwater] twice raised his claim of denial of a speedy trial by a writ of habeas corpus in the trial court, he did not seek pretrial appellate resolution of that issue.

In addition to the numerous writ petitions, [Rainwater] also filed multiple motions under *People v. Marsden* (1970) 2 Cal. 3d 118 (*Marsden*), to relieve his appointed counsel, Mr. Saria. On May 26, 2009, [Rainwater] filed a *Marsden* motion, or alternatively, a motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 [45 L. Ed. 2d 562]. On June 15, 2009, [Rainwater] withdrew the motion and agreed Mr. Saria could continue representing him as trial counsel because Mr. Saria knew his case better than any other attorney. Approximately 10 days later, on June 24, 2009, [Rainwater] filed a second *Marsden* motion to relieve Mr. Saria. [Rainwater] appears to have renewed the motion on August 28, 2009, but three days later withdrew the motion and agreed that Mr. Saria could continue to represent him.

[Rainwater] filed another *Marsden* motion on February 10, 2010. The court held a closed hearing and denied the motion that same day. The court found compelling Mr. Saria's testimony, confirmed by the defense's investigator, that [Rainwater] agreed to continue trial while he progressed through treatment at the hospital, and that he had no interest in going to trial because he anticipated losing. The court expressly disbelieved [Rainwater's] testimony to the contrary.

E. *Trial Proceedings*

The jury trial to determine whether [Rainwater] qualified as an SVP during the period beginning in June 2002 finally commenced in October 2010. Two expert psychologists, Drs. Longwell and Starr, testified for the People. Each psychologist met and evaluated [Rainwater] approximately 10 times.

The psychologists reviewed reports from [Rainwater's] first commitment, probation reports, his legal history, hospital records, and notes by his treatment team. They diagnosed [Rainwater] as currently suffering from several mental disorders, including pedophilia (sexually attracted to prepubescent boys, nonexclusive), bipolar two disorder in partial remission, antisocial personality disorder, sexual sadism, and personality disorder not otherwise specified with antisocial and borderline features.

In addition to interviewing [Rainwater] and reviewing his records, Drs. Longwell and Starr used a variety of actuarial tools to assess [Rainwater's] risk if released. Each of these risk assessment tools put [Rainwater] in the high risk category for reoffending. Based on [Rainwater's] criminal and medical history, [Rainwater's] failure to complete all phases of treatment while committed at the hospital and while out on parole, and [Rainwater's] high risk scores on the actuarial instruments, Drs. Longwell and Starr testified that [Rainwater] had a substantial, well-founded risk of reoffending and they did not believe [Rainwater] could control his behavior if released into the community.

Two experts testified for the defense. Dr. Heard challenged the adequacy of the actuarial tools used to predict whether [Rainwater] could control his behavior or whether he was likely to reoffend, but he conceded that he had never evaluated [Rainwater] or reviewed his records. Dr. Podboy testified that he evaluated [Rainwater] twice and diagnosed him with pedophilia by history, meaning [Rainwater] previously suffered from pedophilia but that currently he did not suffer from the disorder. In Dr. Podboy's opinion, [Rainwater] could control his behavior and was unlikely to commit violent sexual acts if released. Unlike the prosecution experts, he did not use any actuarial

instruments when evaluating [Rainwater] but instead relied on his observations and clinical judgment alone.

        The jury found the allegations in the petition to be true, and the trial court ordered [Rainwater] committed for an indeterminate term as an SVP.

*People v. Rainwater*, No. C066609, 2014 WL 3489789, at *1-5 (Cal. Ct. App. July 15, 2014).

Through counsel, Rainwater appealed the superior court's commitment order, arguing that: 1) there was insufficient evidence showing that he was likely to engage in sexually violent criminal behavior if released; 2) the trial court made two errors when instructing the jury; 3) the court erroneously denied his motion for new counsel and his motion to dismiss for violating his due process right to a speedy trial; 4) his special counsel, appointed to represent him on the motion to dismiss, was ineffective; and 5) his indeterminate commitment violates various provisions of the federal constitution, including equal protection, ex post facto, and double jeopardy. The Court of Appeal unanimously affirmed the judgment and commitment order in a reasoned, unpublished opinion issued on July 15, 2014. *Rainwater*, 2014 WL 3489789, at *18. Rainwater petitioned for review in the California Supreme Court, which was summarily denied on October 1, 2014.

On October 29, 2014, Rainwater timely commenced this action, in which he challenges the November 5, 2010, order of commitment.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Rainwater raises the same 8 claims he raised to the California Supreme Court in his petition for review on direct appeal, namely: 1) the trial court erred by failing to *sua sponte* instruct the jury that amenability to voluntary treatment in the community may raise a reasonable doubt as to whether Rainwater was likely to re-offend; 2) the evidence was insufficient to support the jury's finding that Rainwater met the criteria for commitment under California's SVPA; 3) the trial court erred by failing to *sua sponte* instruct the jury that, in order to find that Rainwater was an SVP, it must find that he had serious difficulty in controlling his sexually violent criminal behavior; 4) the indeterminate terms of commitment under California's SVPA violate the equal protection clause; 5) the trial court erred in denying his February 10, 2010, motion for the substitution of counsel; 6) the trial court erred in denying his February 9, 2010, habeas corpus petition in which Rainwater asserted a violation of his right to a speedy trial; 7) Rainwater was denied the effective assistance of counsel with respect to the litigation of his March 13, 2009, *pro se* motion to dismiss; and 8) the indeterminate terms of confinement under California's SVPA violate the ex post facto, double jeopardy, and due process clauses of the federal Constitution.

## III. STANDARD OF REVIEW

The Ninth Circuit has held that habeas petitions challenging state civil commitment proceedings are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Rose v. Mayberg*, 454 F.3d 958, 961 n.3 (9th Cir. 2006). Under AEDPA, 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams*, 529 U.S. at 406.

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Instructional Errors (Grounds 1, 3)

Rainwater first argues that the trial court made two errors when instructing the jury. Because jury instructions in state trials are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw*, 546 U.S. at 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

   i.  *Amenability to voluntary treatment in the community* (Ground 1)

   Rainwater first argues that the trial court failed to *sua sponte* instruct the jury that evidence of his amenability to voluntary treatment in the community could raise a reasonable doubt as to whether he was likely to engage in sexually violent criminal behavior if released from custody. In support of his claim, Rainwater relies on the California Court of Appeal's

decision in *People v. Grassini*, which held that, where evidence is presented that a person is amenable to voluntary treatment in the community, the court has a *sua sponte* duty to instruct on the necessity of custodial treatment to keep society safe. *See* 6 Cal. Rptr. 3d 662, 671 (Cal. Ct. App. 2003). Again, however, federal habeas relief is unavailable for violations of state law or for alleged errors in the interpretations or application of state law. *Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011). Moreover, the California Court of Appeal's conclusion that state law did not require such an instruction in his case is binding on this Court. *Hicks v. Feiock*, 485 U.S. 624, 629-30 n.3 (1988) (state court's interpretation of state law, including one announced on direct appeal of challenged conviction, binds federal court sitting in habeas corpus).

Finally, even if Rainwater claimed a violation of the federal right to due process, AEDPA requires "clearly established" United States Supreme Court precedent in order to grant federal relief. In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Rainwater's instructional claim must fail. *Cf. Kentucky v. Whorton*, 441 U.S. 786, 789 (1979)

(federal constitution does not require an instruction on the presumption of innocence in criminal proceedings).

      ii.      *Difficulty controlling behavior* (Ground 3)

Rainwater additionally contends that the trial court should have *sua sponte* instructed the jury that, in order to find that Rainwater was an SVP, the jury must find that he had serious difficulty in controlling his sexually violent criminal behavior. In support of his claim, Rainwater points to the U.S. Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407, 413 (2002), in which the Court held that the federal constitution requires that in a civil commitment proceeding "there must be proof of serious difficulty in controlling behavior." According to Rainwater, the standard jury instruction given in his case was constitutionally insufficient on substantive due process grounds in violation of *Crane* because it did not require the jury to find that his mental disorder results in a significant lack of behavioral control. However, Rainwater acknowledges that the California Supreme Court rejected that claim in *People v. Williams*, 74 P.3d 779,786 (Cal. 2003), holding that the instruction premised on the SVPA's statutory language "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal behavior." Again, this Court is bound by the California Supreme Court's interpretation of California law, as laid out in *Williams*, and Rainwater is not entitled to relief on this instructional error claim either. *See Hicks*, 485 U.S. at 629-30 n.3.

B.      <u>Insufficiency of the Evidence to Support Jury's Finding</u> (Ground 2)

Rainwater next argues that there was insufficient evidence to support the jury's finding that he is an SVP. An SVP is defined as "a person who has been convicted of a sexually violent

13

offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." CAL. WELF. & INST. CODE § 6600(a)(1).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). As aforementioned, in order to comply with constitutional requirements with regards to the SVPA, the state must show that Rainwater has serious difficulty in refraining from criminal sexual violence. *Crane*, 534 U.S. at 411-12. This standard does not require "*total* or *complete* lack of control," but "there must be proof of serious difficulty in controlling behavior . . . [in order] to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* at 411-13.

Such a finding is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must

presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any

such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

A review of the record reveals that the evidence introduced at Rainwater's civil

commitment trial, as laid out in detail above, was sufficient to support the jury's verdict that

Rainwater met the definition of an SVP.  Both Drs. Longwell and Starr are licensed doctors who

met personally with Rainwater  prior to diagnosing him with several mental disorders, including

pedophilia, bipolar two disorder in partial remission, antisocial personality disorder,[2] sexual

sadism, and personality disorder not otherwise specified with antisocial and borderline features.

The jury was free to accept the conclusions of the prosecution experts over the defense

experts.  Thus, the evidence was sufficient to support the jury's finding that Rainwater had a

"mental disorder that ma[de] [him] a danger to the health and safety of others in that it is likely

that he . . . will engage in sexually violent criminal behavior."  CAL. WELF. & INST. CODE

§ 6600(a)(1); *see Rose v. Mayberg*, 454 F.3d 958, 962-65 (9th Cir. 2006) (finding of "mental

disorder" that affected offender's emotional or volitional capacity and predisposed him to

commit further sexual crimes constitutionally supported SVPA commitment).  The jury's finding

---

[2]      In *Hubbart v. Superior Court*, the California Supreme Court rejected the appellant's request to strike down the SVPA because it does not expressly exclude antisocial personality disorders or other conditions characterized by an inability to control violent antisocial behavior, such as paraphilia, from being categorized as a "diagnosable mental disorder."  969 P.2d 584, 598-99 (Cal. 1999).  In so ruling, the court necessarily found that these conditions can be mental disorders under the SVPA.  Likewise, in an unpublished opinion, the California Court of Appeals rejected the contention that an antisocial personality disorder diagnosis cannot provide the basis of an SVPA commitment.  *People v. Swain*, No. F056514, 2010 WL 717687, at *3 (Cal. Ct. App. Mar. 3, 2010) ("We have found no authority to support Swain's position that an antisocial personality disorder alone cannot form the basis of an SVP commitment where, like here, the jury makes the required finding that the disorder makes him a danger to the public because, as a result of the disorder, it is likely that he will engage in sexually violent predatory conduct.").

based on such evidence does not fall below the threshold of bare rationality, and the doctors'

testimony at Rainwater's trial satisfied *Jackson*.

In arguing to the contrary, Rainwater claims, as he did on direct appeal, that insufficient

evidence was presented to establish "a causal link between the asserted mental disorders and the

asserted likelihood of reoffending."  Rainwater appears to argue that the SVPA requires evidence

showing exactly how the diagnosed mental disorder operates so as to impair the ability to control

sexually violent criminal behavior.  But the United States Supreme Court has never established

such requirement in civil commitment hearings.  As the California Court of Appeals reasonably

concluded:

> [T]he root cause of [Rainwater's] mental disorder is not relevant under the statute.
> Instead, section 6600 requires only that [Rainwater's] mental disorder causes him to be a
> danger to others in that he is likely to engage in sexually violent predatory behavior.
> (§ 6600, subd. (a)(1).)  The underlying etiology of the mental disorder—or what made
> him a pedophile in the first instance—is simply not in question.  When viewed in the
> proper context, then, the issue is whether the record contains sufficient evidence that
> [Rainwater] is a danger to society because his diagnosed pedophilia makes it likely he
> will commit predatory acts of sexual violence if released.

*Rainwater*, 2014 WL 3489789, at *5.

In short, ample evidence presented at Rainwater's trial demonstrates that the California

Court of Appeal's rejection of Rainwater's claim was reasonable, and Rainwater is therefore not

entitled to relief on this ground.

C.      Constitutional Challenges to California's SVPA (Grounds 4, 8)

Rainwater additionally advances a number of constitutional challenges to California's

SVPA.

i.      *Due process*

The SVPA provides for the civil commitment of a person found to be "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." CAL. WELF. & INST. CODE § 6600(a)(1). Persons who are in custody under the jurisdiction of the California Department of Corrections and Rehabilitation are screened prior to their scheduled release from prison and, for those who screen positive, full evaluations are performed by the DMH. *Id.* § 6601. If formal commitment proceedings are initiated, the person is entitled to a trial by jury, *id.* § 6603(a), at which the verdict must be unanimous, *id.* § 6600(f), and the burden of proof is beyond a reasonable doubt, *id.* § 6604.

The SVPA originally provided for a two-year term of commitment and two procedures by which an SVP could obtain release. First, former § 6605 required the DMH to submit an annual report with the committing court, following an examination, considering whether the committed person currently met the definition of an SVP and whether unconditional release was appropriate. *See* 1995 Cal. Legis. Serv. Ch. 763 (A.B. 888) (West). Second, the DMH was required to notify the SVP of his or her right to petition the committing court for conditional release under § 6608 and to forward the notification and a waiver of the SVP's right to petition as part of the annual report. *Id.* If the SVP did not waive his or her right to petition, the committing court was required to set a show cause hearing to determine whether the person still met the definition of an SVP. *Id.*

The SVPA, as amended by Proposition 83, now provides for an indeterminate term of commitment. CAL. WELF. & INST. CODE § 6604. The amended SVPA no longer requires the

DMH to submit notification and waiver of the SVP's right to petition the committing court under § 6608 as part of their annual report, but the amended SVPA continues to provide two procedures by which an SVP can obtain release. Section 6605 requires the DMH, following an examination, to submit an annual report with the committing court considering "whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." *Id.* §§ 6604.9(a), 6605. The DMH is required to authorize the person to file a petition for conditional release or unconditional discharge where the person's condition has so changed that he no longer meets the definition of an SVP or conditional release is appropriate. *Id.* §§ 6604.9(b), 6605. Second, under § 6608, a person under commitment as an SVP may unilaterally petition for release, conditional or unconditional, without DMH concurrence. *Id.* § 6608(a). The committed person has the burden of proof by a preponderance of the evidence. *Id.* § 6608(i).

The California Court of Appeals rejected Rainwater's due process claim as foreclosed by the California Supreme Court's decision in *McKee I*, 223 P.3d 566. *Rainwater*, 2014 WL 3489789, at *18. It cannot be said that the California Court of Appeal's rejection of his due process claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). The United States Supreme Court has never held that the prosecution must bear the burden of proof at a release hearing initiated by a person who was civilly committed under state law upon a finding beyond a reasonable doubt that the person met the criteria for commitment. In *Addington v. Texas*, 441 U.S. 418, 427 (1979),

the Supreme Court stated that the State needed to show something beyond a preponderance of the evidence to civilly commit an individual. California's SVPA requires in the initial hearing the more stringent burden of proof beyond a reasonable doubt; it is therefore in accord with *Addington*, and *Addington* did not reach the issue of what is required at subsequent civil commitment trials. Nor is there any Supreme Court authority that requires periodic judicial hearings with regard to continued civil commitment or mandates more mechanisms for judicial review than the SVPA provides.

Indeed, the Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997), further warrants the denial of this claim. In *Hendricks*, the Supreme Court reviewed Kansas' SVPA, which is similar to that of California. The Kansas SVPA "establishe[d] procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' [were] likely to engage in 'predatory acts of sexual violence.'" *Id.* at 350 (citation omitted). Under the Kansas statute, a trial was held to make the initial determination as part of the process for committing an individual the State believed to be a sexually violent predator. *See id.* at 352-53. A confined individual was entitled to an annual review by the committing court to determine whether further commitment was necessary. *See id.* The Secretary of Social and Rehabilitative Services also could authorize the individual to petitioner for relief if he or she determines that the individual's condition has so changed that release was appropriate. *See id.* The confined individual could also petition the committing court at any time. *See id.* Upon reviewing these provisions, the Supreme Court upheld the Kansas SVPA, stating that "[w]e have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to

proper procedures and evidentiary standards." *Id.* at 357.  The Court did not address the specific

procedures for continued confinement or the burden of proof in subsequent proceedings.

In sum, because there is no Supreme Court precedent that controls on the due process

claim raised by Rainwater in state court and the California SVPA is similar to another state's

SVPA which was upheld by the Supreme Court, the California Court of Appeal's decision

cannot be contrary to, or an unreasonable application of, clearly established Supreme Court

precedent.  *See Carey*, 549 U.S. at 77.

    ii.    *Equal protection*

Rainwater additionally argues that SVPs committed under the SVPA are denied equal

treatment in comparison to those determinately committed as mentally disordered offenders

("MDO's") and as not guilty by reason of insanity ("NGI's").

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of

Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)).  The Supreme Court has articulated three distinct standards applicable to equal

protection analysis: strict scrutiny, heightened scrutiny and rational basis review.  *Id.* at 440-41.

The standard to be invoked depends on the nature of the class involved or the interest affected.

In *McKee I*, the California Supreme Court found "some merit" in this contention and

remanded the case "to the trial court to determine whether the People . . . can demonstrate the

constitutional justification for imposing on SVPs a greater burden than is imposed on MDO's

and NGI's in order to obtain release from commitment."  223 P.3d at 578, 587.  The Court of

Appeal, after independently reviewing the additional evidence presented on remand in the

superior court, subsequently concluded:

> [T]he People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). The People have shown that, "notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." The People have shown "that the inherent nature of the SVP's greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children"; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting the reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered.

*McKee II*, 144 Cal. Rptr. 3d at 324 (internal citations omitted).

While Rainwater recognizes that the California Court of Appeal's decision in *McKee II* is

fatal to his equal protection claim here, he urges this Court to disregard that authority as

incorrectly decided under federal constitutional law. But it simply cannot be said that the

appellate court's determination that the disparate treatment between SVPs and MDO's and

NGI's is necessary to further a compelling state interest is objectively unreasonable. *Williams*,

529 U.S. at 409; *see Seeboth v. Allenby*, 789 F.3d 1099, 1107 (9th Cir. 2015). Indeed, the Ninth

Circuit recently considered "whether it was objectively unreasonable for the state courts to hold

that the state legislature had a rational reason to distinguish between individuals who have been

found to be mentally ill and dangerous (MDOs and NGIs) and individuals who have been found

to be mentally ill and *sexually* dangerous (SVPs)." *Seeboth*, 789 F.3d at 1106. It ultimately

concluded, "With respect to the procedural steps in the civil recommitment process that are at

issue here, the state court reasonably concluded that California may make such a distinction." *Id.* Accordingly, Rainwater is not entitled to relief on his equal protection claim.

      iii.    *Ex post facto/double jeopardy*

The Ex Post Facto Clause applies only to punishment for criminal acts, whether punishment for an act not punishable at the time it was committed, or additional punishment to that then prescribed. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). To determine what constitutes punishment in an ex post facto claim analysis, the Supreme Court has applied the double jeopardy "intent-effects" test set out in *United States v. Ward*, 448 U.S. 242, 248-249 (1980). *See Smith v. Doe*, 538 U.S. 84, 92 (2003). The two-pronged *Ward* test requires that the court inquire: (1) whether the legislature intended to impose punishment and, if not, (2) whether the sanction is so punitive in purpose or effect as to negate the state's intent to deem it civil. *Smith*, 538 U.S. at 92. The Court shall reject the legislature's intent under the second "effects" prong only where there is "the clearest proof" to support such a finding. *Id.*

The SVPA is a non-punitive statute under the initial intent prong of the *Ward* test. First, the SVPA is placed within Welfare & Institutions Code, rather than California's criminal code, differentiating it from the state's laws intended to punish criminal acts. Second, language in Proposition 83 states that "[i]t is the intent of the People in enacting this measure to help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses." 2006 Cal. Legis. Serv. Prop. 83 §1(f) (Proposition 83) (WEST). The people of California approved Proposition 83 in 2006, amending the SVPA and thus expressing their intent that it serve as a civil commitment statute rather than a mechanism to punish criminal conduct.

Moving to the second prong of the *Ward* test, the SVPA's effects are not so punitive as to overcome the act's civil intent.  In assessing a law's effects, the Court shall consider the following seven-factor test:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (footnotes omitted); *see, e.g., Smith v. Doe*, 538 U.S. 84, 95-105 (2003).

The seven-factor test set out in *Mendoza-Martinez* indicates that the SVPA's effect is non-punitive.  Under factors one and two, while the SVPA involves an affirmative disability or restraint, civil commitment of sexually violent predators has been historically regarded as a legitimate non-punitive governmental objective.  *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997).  Under factor three, SVPA commitment is based upon a currently "diagnosed mental disorder" rather than on a finding of scienter.  CAL. WELF & INST. CODE § 6600(a)(1),(c).  Factor four is not supportive of Rainwater's position because the SVPA cannot be said to serve the penological purpose of deterrence or retribution because commitment is contingent on the inability to control sexually violent urges which, by definition, cannot be controlled or deterred, and the lack of a scienter requirement in the SVPA suggests that the statute is not intended to promote the penological purpose of retribution.  Under factor five, the behavior to which the SVPA applies is not a crime because being diagnosed with a mental disorder is not a crime.  Finally, under factors six and seven, the duration of an SVPA commitment is both related to the act's rehabilitative

purpose and not excessive because commitment is conditional upon a current mental disorder. *Id.* §§ 6605, 6608. In sum, consideration of all seven *Mendoza-Martinez* factors strongly suggests that the SVPA's effects are civil.

It is important to note that the Supreme Court denied a habeas challenge in circumstances similar to those presented by Rainwater's ex post facto claim. In *Hendricks*, the Supreme Court upheld a Kansas civil commitment statute under the *Ward* "intent-effects" test, reasoning that the potential for indefinite confinement showed the rehabilitative, rather than punitive, purpose of the statute. *Hendricks*, 521 U.S. at 361-362. Additionally, the statute did not have a retroactive effect because confinement was conditioned upon a determination that the person was currently suffering from a mental disorder. *Id.* The SVPA mirrors the Kansas statute in that there is a potential for indefinite confinement and that commitment lasts only so long as the detainee suffers from an ongoing, diagnosed mental disorder. Accordingly, the California Court of Appeal's decision rejecting Rainwater's ex post facto challenge is neither unreasonable nor contrary to federal law, and Rainwater is therefore not entitled to relief on his ex post facto claim.

And because California's SVPA is civil and not criminal in nature, any attack on double jeopardy grounds is likewise foreclosed. *See Seling v. Young*, 531 U.S. 250, 260-65 (2001) (the civil nature of a statute forecloses double jeopardy claims, even if the individual argues that the statute is punitive as applied to him or her, because it does not establish criminal proceedings or constitute a punishment); *Hendricks*, 521 U.S. at 359-69. Rainwater therefore cannot prevail on any constitutional attack to California's SVPA.

D.    <u>Trial Court's Denial of Motion for Substitution of Counsel</u> (Ground 5)

Rainwater next alleges in Ground 5 that the trial court erred in denying his February 10,

2010, motion for the substitution of counsel pursuant to *People v. Marsden*, 465 P.2d 44 (Cal.

1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-

appointed attorney without holding a hearing to allow the defendant to explain its grounds).

The Sixth Amendment right to counsel guarantees to an accused the concomitant rights to

conflict-free representation and the effective assistance of counsel.[3]  *See Wheat v. United States*,

486 U.S. 153, 156 (1988); *Strickland*, 466 U.S. at 686.  The denial of a *Marsden* motion may

implicate the Sixth Amendment right to counsel.  *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.

2000) (en banc); *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled

on other grounds in *Schell*, 218 F.3d at 1025-26; *Hudson v. Rushen*, 686 F.2d 826, 828-29 (9th

Cir. 1982).

The Sixth Amendment right to counsel also includes a qualified right to retain counsel of

choice.  *See Schell*, 218 F.3d at 1025 (citations omitted).  However, an indigent defendant, while

entitled to appointed counsel, is not constitutionally entitled to appointed counsel of choice.

*Hendricks v. Zenon*, 993 F.2d 664, 671 (9th Cir. 1993).  When a criminal defendant requests a

substitution of appointed counsel, the trial court is constitutionally required to inquire about the

defendant's reasons for wanting a new attorney.  *Schell*, 218 F.3d at 1025 ("[I]t is well

established and clear that the Sixth Amendment requires on the record an appropriate inquiry

---

[3]    Under California's SVPA, Rainwater had the right to the appointment of counsel
to assist him in light of his indigence.  *See* CAL. WELF. & INST. CODE § 6603(a).  The Court will
therefore assume, without deciding, that Rainwater had a due process right to the effective
assistance of counsel, including a correlative right to representation free of conflict.

into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward."). The Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). The ultimate question before this Court then is not whether the state trial court abused its discretion in denying Rainwater's motion but whether its denial "actually violated [Rainwater's] constitutional rights in that the conflict between [Rainwater] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

Here, the record reflects that Rainwater was given an opportunity to address his concerns with counsel to the court. Upon independent review of the hearing transcript, there is no indication that Rainwater was in any way prevented from sharing his concerns with the court, and Rainwater fails to demonstrate that he had a valid basis for demanding new counsel. *See United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was given the opportunity to express whatever concerns he had, and the court inquired as to [defense counsel's] commitment to the case and his perspective on the degree of communication"). Because Rainwater fails to demonstrate that the facts enumerated by the

Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion, Rainwater cannot

show that he was denied his Sixth Amendment right to counsel and is therefore not entitled to

relief on this claim.

E.    Trial Court's Denial of Habeas Speedy Trial Claim (Ground 6)

Rainwater further contends that the trial court erred in denying his February 9, 2010,

habeas corpus petition in which he moved for dismissal of the pending SVP commitment

proceedings based on an alleged violation of his right to a speedy trial.   The California Court of

Appeal considered and rejected this claim on direct appeal as follows:

> [Rainwater] contends the trial court erred in refusing to consider the merits of his
> February 9, 2010 habeas corpus petition, which sought dismissal under *Litmon* based on
> the alleged excessive delay in resolving his matter.  (*Litmon*, *supra*, 162 Cal. App. 4th
> 383.)  Even assuming the court erred by not considering the writ petition on the merits
> (*Johnson*, *supra*, 26 Cal. 3d at pp. 573–574 [trial court should have considered criminal
> defendant's petition for writ of habeas corpus raising alleged violation of Penal Code
> section 1382, which addresses a criminal defendant's statutory right to a speedy trial]),
> we conclude [Rainwater's] argument fails for want of prejudice as [Rainwater's] right to a
> speedy trial was not violated.
>
> [Rainwater] first raised the speedy trial issue under *Litmon* in or about January
> 2009 when he filed a habeas corpus petition in the court below.  The court denied the
> petition without prejudice to raising the issue in a motion before the trial court.
> [Rainwater] filed such a motion in March 2009, and the court appointed special counsel
> to represent [Rainwater] on the motion.  In August 2009, after full briefing and a hearing
> on the merits, the court balanced the *Litmon* factors against [Rainwater], determining he
> had suffered no speedy trial violation.  [Rainwater] did not seek pretrial appellate
> resolution of the issue.  Nor does he directly challenge the court's ruling on the motion to
> dismiss on appeal.
>
> [Rainwater] filed a second habeas corpus petition in February 2010 asserting
> another speedy trial challenge under *Litmon*.  Like before, the court denied the petition
> without prejudice to raising the issue via motion before the trial court.  It does not appear
> [Rainwater] ever filed a second motion to dismiss.  Nor did [Rainwater] seek pretrial
> appellate review of the 2010 writ petition denial.  Instead, he challenges the denial here.
>
> "The SVPA does not specify a time by which a trial on a commitment proceeding
> must be commenced or concluded."  (*People v. Sanders*, *supra*, 203 Cal. App. 4th at p.
> 846.)  "Though the constitutional right to a speedy trial applies only in criminal
> prosecutions, the federal due process clause extends to involuntary civil commitments
> under the SVPA and requires a hearing ""at a meaningful time and in a meaningful

manner.'"'" (*Ibid.* [quoting *Litmon*].)  In determining whether a hearing has been unconstitutionally delayed, "we look to the standards and precedents established in the analogous criminal context for guidance."  (*Id.* at p. 847.)  In criminal proceedings, the essence of a speedy trial violation is that the passage of time has frustrated a defendant's ability to defend the allegations against him.  (*Ibid.*)

Because [Rainwater] does not expressly challenge the court's August 2009 denial of his motion to dismiss, any delay occurring between 2002 and August 28, 2009, is not at issue.  (*Heavenly Valley v. El Dorado County. Bd. of Equalization* (2000) 84 Cal. App. 4th 1323, 1345, fn. 17 [points not raised under an appropriate heading need not be addressed]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must state each point under a separate heading or subheading summarizing the point].)  In any event, we find the trial court was amply justified in denying the motion to dismiss.

The court engaged in a careful balancing process within the context of this particular case as required by *Litmon*.  (*Litmon*, *supra*, 162 Cal. App. 4th at p. 398 ["The inquiry 'necessitates a functional analysis of the right in the particular context of the case' since the right to a speedy trial is relative"].)  The court considered such factors as the length of the delay, the reason for the delay, when [Rainwater] asserted his right to a trial, whether [Rainwater] suffered any prejudice as a result of the delay, and whether he had suffered oppressive pretrial incarceration.

Based on the evidence presented by the parties, including a declaration submitted by Mr. Saria, the court found [Rainwater] made a conscious decision to delay trial in order to continue treatment as a means of improving his chances before a jury.  The viability of this strategy was confirmed by the special counsel appointed to represent [Rainwater] on his motion to dismiss: "As mentioned in Mr. Rainwater's declaration he has also completed a considerable amount of rehabilitation, a program which is actually chosen by few individuals facing SVP petitions, and based on recent litigation, a crucial factor in the outcome on the SVP trials."

After finding [Rainwater] consented to the delay in order to better his chances before a jury, the court also found that rather than impair his defense, the delay strategy likely improved his chances of success.  This finding is confirmed by the statements of [Rainwater's] special counsel quoted above.  The court also concluded that confinement in the hospital was not oppressive as [Rainwater] had requested several times to be transferred back to the hospital after being held in the county jail prior to court appearances.

It is plain the court properly grasped the gravity of the balancing test under *Litmon*.  On this record, we cannot say the court erred in balancing the factors against finding a speedy trial violation since unlike in *Litmon* much of the delay was attributable to defendant and his trial strategy, which was for his benefit.  (*See e.g.*, *Orozco v. Superior Court* (2004) 117 Cal. App. 4th 170, 179 [defendant waives the delay issue where delay attributable to defendant or his counsel]; *People v. Sutton* (2010) 48 Cal. 4th 533, 549 [delay caused by the conduct of the defendant or for defendant's benefit constitutes good cause to deny a motion to dismiss].)  We also note that [Rainwater] engaged in extensive writ and motion practice that also contributed to the delay in bringing the case to trial.

We turn, then, to whether the delay from August 28, 2009, when the court denied [Rainwater's] motion to dismiss, until February 9, 2010, when [Rainwater] once again raised the speedy trial issue, constituted unreasonable delay. We conclude it did not.

On August 31, 2009, defendant consented to setting the trial on January 6, 2010. On January 6, defense counsel asked to trail the trial until January 13. On January 13, defense counsel requested a further continuance until February 22 due to the unavailability of expert witnesses and also because he needed more time to prepare. [Rainwater] consented to the continuance because it was for his benefit. The record shows that, with the exception of a few days, [Rainwater] consented to delaying the trial until February 22, 2010. Where a defendant consents good cause exists to continue the trial date, thereby negating any potential speedy trial violation. (*Johnson*, *supra*, 26 Cal. 3d at p. 563.)

Given the circumstances surrounding [Rainwater's] case, and in particular his trial strategy to delay going to trial while he was in treatment, [Rainwater's] trial took place in a meaningful time and in a meaningful manner. Thus, no speedy trial violation occurred. Even had the trial court considered [Rainwater's] February 9, 2010 writ petition on the merits, we are satisfied beyond a reasonable doubt that the court would have denied the writ. [Rainwater's] challenge therefore fails for want of prejudice.

*Rainwater*, 2014 WL 3489789, at *13-14.

The Sixth Amendment to the United States Constitution guarantees an accused criminal the right to a speedy trial. *Doggett v. United States*, 505 U.S. 647, 651 (1991) (explaining that a court should assess four factors in determining whether the Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right; and (4) whether the defendant suffered prejudice as a result of the delay); *Barker v. Wingo*, 407 U.S. 514, 530 (1972). However, since a commitment proceeding under the SVPA is not a criminal prosecution, the Sixth Amendment right to a speedy trial does not apply in this case. *See United States v. Perry*, 788 F.2d 100, 118 (3d Cir. 1986) ("The speedy trial clause deals with the timeliness of criminal prosecutions, not civil commitment proceedings."); *see generally Kansas v. Hendricks*, 521 U.S. 346, 364–65 (1997) (the fact that state chose to afford persons undergoing SVP proceedings certain procedural and evidentiary

protections applicable in criminal trials "does not transform a civil commitment proceeding into a criminal prosecution").

The U.S. Supreme Court has not addressed whether there is a due process right to a speedy civil commitment trial. Nevertheless, some courts have analyzed speedy trial claims in the SVPA commitment context under the four-part test set forth in *Barker*, 407 U.S. at 530. *See, e.g.*, *Page v. Lockyer*, 200 F. App'x 727, 727-29 (9th Cir. 2006) (analyzing and rejecting Sixth Amendment speedy trial claim from petitioner's SVPA commitment); *Sisneroz v. California*, No. 07-cv-0500, 2009 WL 302280, *7–11 (E.D. Cal. Feb. 6, 2009) (denying claim that delay in bringing recommitment petition to trial violated due process because petitioner showed no prejudice); *Coleman v. Mayberg*, No. C 01-3428, 2005 WL 1876061, *6 (N.D. Cal. Aug. 8, 2005) (applying *Barker* analysis to find that five-year delay in holding commitment hearing did not violate petitioner's speedy trial rights); *People v. Litmon*, 76 Cal. Rptr. 3d 122, 135-41(Cal. Ct. App. 2008) (finding that delay in bringing recommitment petition violated due process under *Barker* and *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

An independent review of the four factors compels the same conclusion reached by the Court of Appeal. For the reasons thoroughly and persuasively explained by the appellate court, Rainwater fails to establish that he is entitled to federal habeas relief on his speedy trial claim.

F.    Ineffective Assistance of Counsel (Ground 7)

Finally, Rainwater claims that special counsel, appointed to represent Rainwater on his *pro se* motion to dismiss under *Litmon* the proceedings for his commitment as an SVP, rendered ineffective assistance with respect to the litigation of that March 13, 2009, motion. Specifically, Rainwater alleges that special counsel failed to: 1) argue that a habeas petition was a proper

vehicle for Rainwater's assertion of his right to a speedy trial, thus resulting in the trial court erroneously concluding that Rainwater did not assert his right to a speedy trial until he failed his March 13, 2009, motion; 2) obtain records of the continuances granted in Rainwater's case to refute the trial court's understanding that trial counsel had sought and obtained continuances on the ground that Rainwater sought further treatment prior to trial; 3) know and advice the court that Rainwater had not been a party to the proceedings in the California Court of Appeal in *Borquez v. Superior Court*, 68 Cal. Rptr. 3d 142 (Cal. Ct. App. 2007).

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[4] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also*

---

[4]    *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

*Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing

ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Rainwater must show that defense counsel's representation was not within the

range of competence demanded of attorneys in criminal cases, and there is a reasonable

probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill*

*v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied

if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

The record here does not support Rainwater's contention that special counsel was

ineffective. Rainwater first complains that special counsel failed to argue that a habeas petition

was a proper vehicle for Rainwater's assertion of his right to a speedy trial. The record reflects

that, in January 2009, Rainwater filed a *pro se* petition for habeas relief in the superior court in

which he first alleged a denial of his right to a speedy trial. On February 24, 2009, the superior

court denied the habeas petition without prejudice to Rainwater raising the issue by way of a

motion in the pending recommitment proceedings. According to Rainwater, special counsel's

failure resulted in the trial court erroneously considering Rainwater to have not asserted his

speedy trial right until he filed his March 13, 2009, *pro se* motion to dismiss. Although the trial court attributed the delay between January 2009 and March 2009 to Rainwater, the trial court also stated that, "in any event," it was denying Rainwater's motion to dismiss for lack of prejudice. *See Rainwater*, 2014 WL 3489789, at *15. The record thus reflects that, even if special counsel had argued that Rainwater properly invoked his speedy trial rights in January 2009, the trial court would nonetheless have denied the motion. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

The California Court of Appeal also reasonably concluded that Rainwater failed to establish prejudice with respect to special counsel's failure to obtain records of continuances to refute the notion that trial counsel had sought continuances so that Rainwater could engaged in further treatment prior to trial. As the appellate court noted, "Even if special counsel had obtained the transcripts, it is not reasonably probable that the court would have ruled differently on [Rainwater's] motion to dismiss." *Rainwater*, 2014 WL 3489789, at *15.

With respect to Rainwater's third contention—that special counsel was ineffective for failing to know and advise the court that Rainwater had not been a party to the writ proceedings in *Bourquez*—the Court of Appeal also reasonably found no prejudice:

> Although it is true that [Rainwater's] matter was not included in the *Bourquez* proceedings and thus not subject to the stay imposed by this court, the trial court had itself stayed all SVP cases, including [Rainwater's], pending the outcome of *Bourquez*. Thus, it is not reasonably probable the trial court would have granted the motion had special counsel corrected the trial court's harmless misunderstanding given that a stay was in fact in place for the same period. The particular identity of the court imposing the stay is irrelevant under the circumstances presented here.

*Id.* at *16.

33

Finally, Rainwater fails to establish prejudice from special counsel's failure to impeach representations made by the prosecution that the People had not requested any of the continuances. Here, the trial court determined that the predominant cause for the delay was Rainwater's strategic decision to continue trial to allow him the opportunity to progress through treatment and increase his chance of success at any subsequent jury trial, a factual finding that is supported by the record. In light of this finding, and the record before the trial court, it is not reasonably likely that the court would have granted Rainwater's motion to dismiss even if special counsel had reminded the court that some of the continuances were at the People's request to obtain updated evaluations of Rainwater, to conduct probable cause hearings, and due to the unavailability of expert witnesses. Rainwater is therefore not entitled to relief on any argument advanced in support of his ineffective assistance of special counsel claim.

## V. CONCLUSION AND ORDER

Rainwater is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 6, 2017.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge